UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL J. HILL,

          Petitioner,

v.

ANTHONY J. ANNUCCI,

          Respondent.

**DECISION AND ORDER**

6:21-CV-06373 EAW

---

## INTRODUCTION

*Pro se* petitioner Michael J. Hill ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his September 2018 conviction in Niagara County Court for assault in the second degree. The operative pleading is the amended petition, which sets forth the following claims: (1) Petitioner's guilty plea was not knowing, voluntary, and intelligent because he entered into a conditional plea that was not subsequently recognized by the state appellate court; (2) the indictment was defective because it was obtained by perjured grand jury testimony; (3) the indictment was defective because the prosecutor intimidated and lied to the grand jurors; (4) the prosecutor failed to disclosure exculpatory material as required by *Brady v. Maryland*, 373 U.S. 83 (1963), and thereby prevented Petitioner from preparing his defenses; and (5) the trial court judge was biased and required to recuse. (Dkt. 14). For the reasons set forth below, the Court denies Petitioner's request for a writ of habeas corpus, dismisses the amended petition, and declines to issue a certificate of appealability.

- 1 -

Petitioner has also filed a motion for permission to file documents electronically and to require Respondent to submit supplemental records. (Dkt. 49). Because Respondent has already submitted all required records and in light of the dismissal of the amended petition, the Court denies this motion.

## BACKGROUND

Petitioner was charged by indictment returned on November 15, 2017, with two counts of burglary in the first degree in violation of New York Penal Law § 140.30(2) and one count of assault in the first degree in violation of New York Penal Law § 120.10(1). (Dkt. 27-1 at 75-76).[1]

On June 17, 2018, Petitioner, who was representing himself with the assistance of standby counsel, appeared before the Hon. Matthew J. Murphy in Niagara County Court (the "County Court") and pled guilty to a reduced charge of assault in the second degree. (Dkt. 27-6). Specifically, Petitioner agreed to plead guilty to assault in the second degree in violation of New York Penal Law § 120.05(2), which was a lesser included count under count three of the indictment. (*Id*. at 2). As part of the plea agreement, Petitioner was required to admit his status as a second violent felony offender and to waive his appellate rights except with regard to three issues: (1) the sufficiency of the indictment and the grand jury proceedings; (2) the trial court's decision on what did and did not constitute *Brady* material; and (3) whether Judge Murphy should have recused due to bias. (*Id*. at 2-3).

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

After some additional discussion of the scope of the *Brady* issue, and as part of the plea colloquy, the County Court had the following exchange with Petitioner and the prosecutor:

> THE COURT: All right. All right. Now do you also understand that you have a separate right to appeal?
> [PETITIONER]: Okay.
> THE COURT: Is that—you understand that?
> [PETITIONER]: Yes, sir.
> THE COURT: Are you asking him to waive all of his rights to appeal or all of his rights except those three items that we talked about?
> [THE PROSECUTOR]: Judge, we're asking that he waive everything except for the three items placed on the record.
> . . .
> THE COURT: All right. So you can't appeal any other issues other than those three issues that we talked about and put on the record a few minutes ago. Do you understand that?
> [PETITIONER]: Yes, sir.
> THE COURT: You will be permitted to appeal on those issues. Do you understand that?
> [PETITIONER]: Yes, sir.
> THE COURT: But all other issues you can't appeal on.
> [PETITIONER]: Okay.

(*Id.* at 13-14).

Pursuant to the plea agreement, the maximum possible sentence was five years of imprisonment and five years of post-release supervision. (*Id*. at 10-11). At the plea hearing, Petitioner acknowledged that as a persistent felony offender, if convicted, he could have been facing a potential life sentence. (*Id*. at 12-13). Petitioner further stated under oath that on October 1, 2017, in Niagara Falls, New York, he stabbed his relative Elton Carr with a sharp instrument, intending to cause serious injury to him. (*Id*. at 16). Petitioner expressly waived any claim of justification or self-defense. (*Id*.). On September 16, 2018, Petitioner

was sentenced by the Hon. Sara Sheldon of the County Court to five-years of imprisonment and five-years of post-release supervision.  (Dkt. 27-9).

Following sentencing, Petitioner filed a motion pursuant to New York Criminal Procedure Law ("CPL") § 440.30 for vacatur of his judgment of conviction, arguing that: (1) the indictment was multiplicitous; (2) the prosecutor impaired the integrity of the grand jury proceedings; (3) Judge Murphy was "patently biased" and showed favoritism toward the prosecutor, who was his co-worker and assistant when he was the district attorney; (4) the indictment was defective because it failed "to sufficiently satisfy the elements of the charges lodged in it"; (5) the indictment should have been dismissed pursuant to New York Judiciary Law § 17 because it was submitted by a district attorney who had formerly been Judge Sheldon's law clerk; and (6) Petitioner's right to due process was violated by the intentional filing of false charges.  (Dkt. 27-1 at 4-6).  Petitioner subsequently filed supplemental papers asserting ineffective assistance of counsel based on assigned counsel's alleged failure to investigate witnesses and the crime scene and to turn over files after Petitioner opted to represent himself.  (*Id*. at 10-13).  Judge Sheldon denied Petitioner's motion without a hearing on January 21, 2020.  (*Id*. at 15-16).  Petitioner did not seek leave to appeal the denial of this motion.

On June 9, 2020, Petitioner file a counseled direct appeal in the Appellate Division, Fourth Department (the "Appellate Division").  (*Id*. at 23-55).  Petitioner argued that: (1) the County Court erred in denying his motion for discovery, including *Brady* disclosures; (2) the County Court should have dismissed the indictment because it was multiplicitous and because of defects in the presentation before the grand jury; and (3) Judge Murphy was

required to recuse himself due to a conflict of interest.  (*Id*.).[2]  The prosecution filed a brief in opposition in which it addressed each of these arguments on the merits.  (*Id*. at 381-96).

On November 20, 2020, the Appellate Division entered a decision unanimously affirming Petitioner's judgment of conviction.  *People v. Hill*, 188 A.D.3d 1756 (4th Dep't 2020).  The Appellate Division concluded Petitioner's *Brady*, multiplicity, and grand jury-related arguments had been forfeited by his guilty plea.  *Id*. at 1756-57.  The Appellate Division further concluded that Petitioner's recusal argument did "not require reversal or modification of the judgment."  *Id*. at 1756.  Petitioner moved for reargument or leave to appeal to the New York Court of Appeals; the Appellate Division denied both requests.  (Dkt. 27-1 at 399-408).  Petitioner subsequently applied directly to the New York Court of Appeals for leave to appeal, but his application was dismissed because he had previously sought leave from the Appellate Division.  (*Id*. at 410).  Petitioner sought reconsideration, which the New York Court of Appeals denied.  *People v. Hill*, 37 N.Y.3d 1096 (2021).

Petitioner filed a motion pursuant to CPL § 440.10 in June of 2020, arguing that: the prosecutor introduced false exhibits to the grand jury; the prosecutor withheld documentary evidence from the defense in violation of *Brady*, thereby rendering Petitioner's guilty plea involuntary; and the County Court improperly denied Petitioner a hearing to establish the falsity of statements in the deposition supporting his arrest warrant.  (Dkt. 27-1 at 411-31).  The County Court denied the motion on January 15, 2021, finding Petitioner's claims

---

[2]     Petitioner also submitted a *pro se* brief in connection with his direct appeal, but it was rejected by the Appellate Division as untimely.  (Dkt. 27-1 at 524).

unreviewable because they had been considered and rejected by the Appellate Division on direct appeal. (*Id*. at 522). Petitioner attempted to seek leave to appeal from the Appellate Division, but his motion was rejected as defective. (*Id*. at 523).

Petitioner commenced this action in May of 2021. (Dkt. 1). The amended petition was filed in October of 2021. (Dkt. 14). In February of 2022, Respondent filed an answer and response arguing, among other things, that Petitioner had failed to exhaust his claim that his guilty plea was unknowing and involuntary because he entered into it understanding that he would be able to appeal certain issues that the Appellate Division subsequently determined had been waived. (Dkt. 26; Dkt. 27).

On March 1, 2022, Petitioner filed a motion pursuant to CPL § 440.10 seeking relief on multiple grounds, including his claim that his guilty plea was not knowing, voluntary, and intelligent. (Dkt. 47-1 at 11-28). The County Court denied this motion on March 28, 2022. (*Id*. at 10). The County Court held that Petitioner's motion "raise[d] the same issues which were considered on appeal and denied by the Appellate Division" and that his "other contentions" were "without merit." (*Id*.). Petitioner sought leave to appeal to the Appellate Division, which was denied. (Dkt. 35-1 at 4). The Court thereafter entered a Decision and Order that, among other things, added documents related to this CPL § 440.10 motion to the record. (Dkt. 41).

Respondent subsequently withdrew the defense of non-exhaustion and, with the Court's leave, filed a supplemental memorandum of law addressing Petitioner's involuntariness claim on the merits. (Dkt. 47). Petitioner thereafter filed a supplemental

reply and his motion for leave to electronically submit documents and to order Respondent to supplement the record.  (Dkt. 48; Dkt. 49).

**DISCUSSION**

## I.    Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  Under § 2254(d), a federal court "shall not . . . grant[ ]" an application for a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* § 2254(d).  In addition, a state court's factual findings are entitled to a presumption of correctness which only may be rebutted by "clear and convincing evidence."  *Id.* § 2254(e)(1).  The Supreme Court has not yet clarified the interaction between AEDPA's two provisions applicable to factual determinations, § 2254(d)(2) and § 2254(e)(1).  *Cardoza v. Rock*, 731 F.3d 169, 178 n.5 (2d Cir. 2013); *see also Wood v. Allen*, 558 U.S. 290, 130 S. Ct. 841, 845 (2010) ("We conclude . . . that the state court's factual determination was reasonable even under petitioner's reading of § 2254(d)(2), and therefore we need not address that provision's relationship to § 2254(e)(1).").

AEDPA articulates a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citation and internal quotation marks omitted). "[W]hen it is unclear whether AEDPA deference applies," the Supreme Court has stated that courts may "deny writs of habeas corpus under § 2254 by engaging in *de novo* review because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

## II.    Validity of Petitioner's Guilty Plea

The Court turns first to Petitioner's claim that his guilty plea was not knowing, voluntary, and intelligent, because he was promised that he would be able to appeal three issues, yet the Appellate Division held that two of those issues had been forfeited by his guilty plea. In order to analyze this claim, a discussion of the interaction between a guilty plea and the right to subsequent appellate review is necessary. "[A] valid guilty plea forgoes not only a fair trial, but also other accompanying constitutional guarantees. . . . A valid guilty plea also renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." *Class v. United States*, 583 U.S. 174, 182 (2018).

In the federal system, a defendant may enter into "a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea." *Id*. at 183 (quoting Fed. R. Crim. P. 11(a)(2)). However, "[g]enerally, conditional pleas are not accepted in New York[.]" *People v. Di Donato*, 87 N.Y.2d 992,

993 (1996) (citing *People v Di Raffaele*, 55 N.Y.2d 234 (1982); *People v Thomas*, 53 N.Y.2d 338 (1981)).  Where a New York trial court nevertheless accepts a conditional plea, an appellate court generally will not afford relief on direct appeal.  *See id.*; *see also People v. Calvello*, 70 A.D.3d 847, 848 (2d Dep't 2010) ("[D]efendant may not raise this issue on appeal, despite his plea being expressly conditioned, with the approval of the court, on his right to appeal the ruling[.]"); *People v. Hardy*, 187 A.D.2d 810, 813 (3d Dep't 1992) ("[D]efendant's conditional plea was interposed long after the Court of Appeals had held that such pleas were an ineffective means of preserving the issue which defendant sought to preserve.  Accordingly, he is entitled to no relief on his direct appeal.").[3]

Liberally construing Petitioner's challenge to his guilty plea, he makes two related but distinct arguments: (1) the inclusion of an unfulfilled and unfulfillable promise in the plea agreement rendered his plea not knowing, voluntary, and intelligent; and (2) the County Court's failure to accurately advise him of the consequences of his guilty plea on his ability

---

[3]     A claim based on the ineffectiveness of the conditional plea can "be addressed in a proceeding pursuant to article 440 of the Criminal Procedure Law." *Di Donato*, 87 N.Y.2d at 993.  New York intermediate appellate courts have opined that where the defendant's decision to enter into the plea was "predicated on . . . [a] promise that he could challenge [a] determination on appeal," but the defendant in fact was not able to mount such a challenge, the defendant should be allowed "to withdraw his plea, should he elect to pursue that course[.]" *People v. Hafer*, 223 A.D.3d 1123, 1126 (3d Dep't 2024); *see also Calvello*, 70 A.D.3d at 848 ("[A]s it is clear from the record that the defendant pleaded guilty in reliance upon a promise from the Supreme Court that could not be fulfilled, the defendant is entitled to withdraw his plea of guilty, if he is so advised[.]").  Of course, this New York law does not provide the rule of decision on federal habeas review. *See, e.g., Potter v. Green*, No. 04-CV-1343 (JS), 2009 WL 2242342, at *6 (E.D.N.Y. July 24, 2009) (acknowledging that a decision of the New York Court of Appeals regarding what information must be conveyed to a defendant during a plea colloquy "is not controlling in a federal habeas proceeding").

to pursue particular issues on appeal rendered the plea not knowing, voluntary, and intelligent.  (*See, e.g.,* Dkt. 14 at 14-15 ("the petitioner was not properly advised or properly admonished to the appeal rights he was waiving and retaining as condition of the guilty plea"); Dkt. 29 at 20 ("the voluntariness of a guilty plea depends on the government's adherence to promises made to induce the plea"), 23 ("the petitioner was misinformed by the prosecution and the county court judge")).  For the reasons that follow, the Court finds that Petitioner is not entitled to federal habeas relief on either of these grounds.

Initially, the Court notes that while the County Court did not explicitly discuss the validity of Petitioner's guilty plea in its denial of Petitioner's most recent CPL § 440.10 motion, "a state court decision need not mention a particular argument or explain the reasons for rejecting it" to constitute a determination on the merits.  *Dallio v. Spitzer*, 343 F.3d 553, 560 (2d Cir. 2003).  A "terse statement" that a petitioner's "remaining contentions are without merit" is sufficient "to trigger AEDPA's heightened standard of review."  *Id.*  In this case, the County Court stated that Petitioner's "other contentions"—which included this claim—were "without merit."  (Dkt. 47-1 at 10).  This constitutes a determination on the merits, and triggers the deferential AEDPA standard of review.

The question before the Court is accordingly whether the County Court's determination was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite

to [the Supreme Court's result]."  *Williams v. Taylor,* 529 U.S. 362, 405 (2000).  A state court's decision is "an unreasonable application" of clearly established federal law if the state court "identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case."  *Id.* at 407.  The Supreme Court's "dicta cannot supply a ground for relief" under AEDPA, "[n]or can holdings that speak only at a high level of generality."  *Brown v. Davenport*, 596 U.S. 118, 136 (2022).

As a general matter, because "[a] guilty plea operates as a waiver of important rights, . . . [it] is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences."  *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quotation omitted); *see also Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969) ("[If] a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.").  The Supreme Court has considered the circumstances under which an unfulfilled or unfulfillable promise may render a guilty plea involuntary on multiple occasions.  In *Brady v. United States*, 397 U.S. 742 (1970), the Supreme Court quoted with approval the Fifth Circuit's statement in *Shelton v. United States,* 246 F.2d 5712 (5th Cir. 1957) that a guilty plea cannot stand where it was induced by "misrepresentation (including unfulfilled or unfulfillable promises)[.]"  *Brady*, 397 U.S. at 755 (quoting *Shelton*, 246 F.2d at 572 n.2).  Later, in *Mabry v. Johnson*, 467 U.S. 504 (1984), the Supreme Court stated that "when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand: 'When a plea rests in any significant degree on a

promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *Id*. at 509 (quoting *Santobello v. N.Y.*, 404 U.S. 257, 262 (1971)).

However, in *Puckett v. United States*, 556 U.S. 129 (2009), the Supreme Court made clear that these statements from *Brady* and *Mabry* were dicta.  *Id*. at 138 n.1.  The phrase "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision," *Williams*, 529 U.S. at 412.  Accordingly, the identified statements from *Brady* and *Mabry* cannot serve as clearly established federal law for AEDPA purposes, and do not provide a basis for granting habeas relief to Petitioner.

The *Puckett* Court also stated that "the government can only be said to have engaged in a misrepresentation when it intended not to fulfill the terms of the plea agreement at the time it entered into it."  *Id*.  The *Puckett* Court explained that where a defendant "pleads guilty on a false premise," the remedy may sometimes be to overturn the resulting conviction, but that "when the conviction is overturned, the reason is <u>not</u> that the guilty plea was unknowing or involuntary."  *Id*. (emphasis added).  To the contrary, the *Puckett* Court held that "there is nothing to support the proposition that the Government's breach of a plea agreement retroactively causes the defendant's agreement to have been unknowing or involuntary." *Id*. at 137.  As another district court in this Circuit has explained, *Puckett* thus stands for the proposition that "a defendant seeking to withdraw his plea on the basis of a prosecutor's misstatement in connection with a plea agreement must demonstrate not only

that the prosecutor made a misstatement, but also that there was an intent *at the time of contracting* not to perform." *Saxon v. Lempke*, No. 09 CIV. 1057 PGG KNF, 2014 WL 1168989, at *12 (S.D.N.Y. Mar. 21, 2014) (quotation omitted and emphasis in original) (denying habeas relief where the petitioner claimed, in part, that his plea had been induced by misrepresentations about whether the imposed sentence could run concurrently to any sentence imposed on the petitioner for violating his parole and was thus involuntary), *aff'd*, 618 F. App'x 10 (2d Cir. 2015).

There is no evidence in the record before the Court that either the prosecutor or the County Court had an intent to mislead Petitioner regarding the impact of his guilty plea on his ability to appeal the three issues as to which he did not waive his appellate rights, nor is there any basis to conclude that the prosecutor intended not to perform at the time the plea agreement was entered into.  To the contrary, it appears that the prosecutor, the County Court, and standby counsel all genuinely believed Petitioner would be able to pursue an appeal as to those claims.  (*See, e.g.,* Dkt. 27-6 at 2-7, 13-14).  Petitioner himself seems to acknowledge this in the amended petition, stating, "[Petitioner's] guilty plea was entered into with clear understanding and direct expectation of the prosecutor, County Court judge, standby counsel and Petitioner, that this court and the appellate court, would not foreclose judicial review of the merits of the (3) issues."  (Dkt. 14 at 16).  Further, in denying Petitioner's CPL § 440.30 motion, the County Court stated regarding the grand jury-related arguments: "The issues presented in Mr. Hill's Motion are factual matters contained the record and appropriate for review on direct appeal." (Dkt. 27-1 at 15).  And, unfortunately, a review of New York case law reveals that it is not uncommon for prosecutors to mistakenly

offer and for New York trial courts to erroneously accept conditional guilty pleas, notwithstanding the long-standing New York rulings regarding the ineffectiveness of the conditions.

While this Court certainly does not condone the offer and acceptance of a plea agreement containing a legally ineffective reservation of appellate rights, the Supreme Court has never held that such action constitutes a violation of the federal constitution, and clearly established federal law does not compel such a conclusion. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from [the Supreme] Court regarding" the relevant issue, "it cannot be said that the state court unreasonably applied clearly established Federal law." (quotation and alterations omitted)). Petitioner's claim that his plea was unknowing and involuntary as a matter of clearly established federal law because it was based on an unfulfilled and unfulfillable promise accordingly must fail.

The Court next turns to Petitioner's contention that his plea was not knowing, voluntary, and intelligent because the County Court failed to adequately and accurately advise him of the impact of his guilty plea on his appellate rights. "The United States Supreme Court has concluded that a defendant can make an intelligent and voluntary guilty plea satisfying due process if he is fully aware of the *direct* consequences of a guilty plea." *United States v. Youngs*, 687 F.3d 56, 60 (2d Cir. 2012) (quotation omitted and emphasis in original). However, "a defendant need not be informed about collateral consequences of his plea, and failure to so inform him does not render the plea involuntary." *Chism v. Adams*, No. CIVS-03-1793MCEKJMP, 2010 WL 2612740, at *6 (E.D. Cal. June 25, 2010) (citing *Hill v. Lockhart,* 474 U.S. 52, 56 (1985)). The Supreme Court has never held "that a

limitation on the right to appeal or even a waiver of appeal is a direct consequence of a plea and that, as a result, a defendant must be notified in order to render the plea valid." *Id*. Accordingly, it is not clearly established as a matter of federal constitutional law that the County Court was required to inform Petitioner of the effect of his guilty plea on his appellate rights. *See Sanchez v. Keller*, No. 06-CIV-3370 JSR/THK, 2007 WL 4927791, at *8 (S.D.N.Y. Dec. 4, 2007) ("[B]ecause the Supreme Court has never addressed the issue of whether mandatory supervised release is a direct consequence of one's conviction, the trial court's failure to inform Petitioner of his mandatory PRS cannot be a violation of clearly established federal law."), *adopted*, No. 06 CIV. 3370 (JSR), 2008 WL 461593 (S.D.N.Y. Feb. 15, 2008).

Nor has the Supreme Court ever held that a guilty plea is invalid where a state trial court affirmatively misinforms the defendant regarding his right to appeal. The Court has found in its own research cases in which the Fourth, Ninth, and Eleventh Circuits have held that a guilty plea was not knowing and voluntary where the defendant was misinformed about his appellate rights. *See United States v. Bundy*, 392 F.3d 641, 649 (4th Cir. 2004) ("We cannot treat Bundy's plea as an unconditional plea unless Bundy entered such a plea, including a waiver of appeal rights, knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences. At the Rule 11 colloquy, the district court outlined the terms of Bundy's plea agreement—including the provision preserving all three pretrial issues for appeal—and Bundy answered that those were the terms to which he agreed. The district court found that Bundy was 'aware of the nature of the charge against him and the consequences of his plea,' and it then accepted Bundy's plea *as a conditional*

*plea.* Based on this record, we cannot treat this plea as a knowing and voluntary *unconditional* plea. Because there is no valid plea—conditional or unconditional—to support the judgment of conviction, that judgment must be vacated." (emphasis in original and quotation omitted)); *United States v. Pierre*, 120 F.3d 1153, 1156 (11th Cir. 1997) ("Because Pierre entered—and the district court accepted—this guilty plea only on the reasonable (but mistaken) belief that Pierre had preserved the speedy trial issues for appeal, his plea was, as a matter of law, not knowing and voluntary."); *United States v. Gustafson*, 26 F.3d 134, 134 (9th Cir. 1994) ("An involuntary plea results where the defendant enters an unconditional plea believing that the plea is conditional.") (unpublished table decision); *United States v. Carrasco*, 786 F.2d 1452, 1455 (9th Cir. 1986) ("Carrasco reasonably could have believed that her plea was conditional, based on both previous discussions with the assistant U.S. attorney and the ambiguous exchange in the courtroom. Accordingly, we cannot conclude that she knowingly and voluntarily entered an unconditional guilty plea."), *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947 (9th Cir. 2007); *see also United States v. Rubi-Perez*, 160 F. App'x 967, 969 (11th Cir. 2006) (invalidating plea based on *Pierre* where "[b]oth Rubi-Perez and the district court were proceeding forward with the guilty plea agreement with the reasonable belief that the issues raised in the motion to dismiss the indictment were preserved for appeal," but government had not consented). But AEDPA prohibits this Court from relying on cases from the courts of appeals "to conclude that a particular constitutional principle is 'clearly established.'" *Lopez v. Smith*, 574 U.S. 1, 2 (2014); *see also Brown*, 596 U.S. at 136 ("It is not enough that the state-court decision offends lower federal court precedents."); *Glebe v. Frost*, 574 U.S.

21, 24 (2014) ("[C]ircuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court." (quotation omitted)).  Petitioner has not cited, nor has the Court's own research uncovered, any case in which the Supreme Court has held that a plea is involuntary and unknowing because the defendant thought he was entering a conditional plea when he was actually entering an unconditional plea.  The County Court thus cannot be said to have unreasonably applied clearly established Supreme Court precedent in rejecting Petitioner's claim that his guilty plea was not knowing, voluntary, and intelligent.

Further, even assuming that Petitioner's guilty plea violated due process, the Court still would have to consider whether the error was harmful.  *See Brown*, 596 U.S. at 133 ("[A] state prisoner should not receive federal 'habeas relief based on trial error unless' he can show the error had a 'substantial and injurious effect or influence' on the verdict." (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993))).  In the context of a guilty plea based on insufficient or inaccurate information, the inquiry focuses on whether the error caused the petitioner to take a plea when he otherwise would not have.  *See Caputo v. Henderson*, 541 F.2d 979, 984 (2d Cir. 1976) ("[T]he proper test for determining the constitutional validity of a state court guilty plea in the event of sentencing misinformation is whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea."); *Potter*, 2009 WL 2242342, at *7 ("Although the Court's inquiry can stop at its determination that the state court did not unreasonably apply clearly established Federal law, the Court also finds that, even had the application been unreasonable, the state court's failure to inform

Petitioner of the PRS period did not make any difference in Petitioner's decision to enter the plea.  Absent a difference, Petitioner's plea, albeit involuntary, was constitutionally valid." (quotation, citations, and alterations omitted)); *Sanchez*, 2007 WL 4927791, at *9 ("Petitioner's claim—that the failure to inform him of mandatory PRS prior to the entry of his guilty plea was a violation of his due process rights—can be dismissed as harmless error, because even if he had known about the PRS, such knowledge would likely not have affected his decision.").

Petitioner claims that if he had "known the county court judge did not have the jurisdiction to designate what issues of appeal would be accepted as not forfeited or waived by the appellate court" then he "would not have pled guilty and instead gone to trial to [preserve] his issues." (Dkt. 29 at 22-23).  Petitioner made a similar assertion in his most recent CPL § 440.10 motion, asserting that "had [he] been aware of [the] fact the Appellate Division would honor the plea terms, [he] would not have plead[ed] guilty and instead went to trial." (Dkt. 47-1 at 27).  However, these assertions are not supported by the evidence of record.  Instead, the record demonstrates that Petitioner pleaded guilty because of the offered sentence.

Petitioner was charged with three class B violent felonies.  Because of his prior criminal history, had he been convicted on any one of those charges, he would have been facing a sentence of 10 to 25 years as a second violent felony offender.  *See* N.Y. Penal Law §§ 70.02(1)(a), 70.04(3)(a).  Further, there was discussion on the record at the plea hearing regarding the fact that Petitioner could have faced a potential life sentence as a persistent felony offender.  (Dkt. 27-6 at 13); *see* N.Y. Penal Law § 70.10.  Instead, Petitioner pleaded

guilty to a single class D violent felony, and received an agreed-upon sentence of five years, the minimum allowed under New York law in light of his criminal history.  *See* N.Y. Penal Law § 70.04(3)(c).

Petitioner stated on the record at the plea hearing that he did not wish to go to trial because of his possible sentencing exposure and because by taking the plea he would receive a sentence of five years.  (Dkt. 27-6 at 16).  Petitioner's prior filings confirm that it was his potential sentencing exposure that caused him to plead guilty.  In his *pro se* brief submitted in support of his direct appeal, Petitioner stated that he accepted the plea because he was "in fear of receiving a life sentence."  (Dkt. 27-1 at 454).[4]  In his § 440.10 motion filed in June

---

[4]     Petitioner asserted in this brief that Judge Murphy had made "threats to pronounce a discretionary life sentence," and that he "believed himself coerced into taking the plea as a result of threats of the Court imposing [a] life sentence."  (Dkt. 27-1 at 468).  He has made similar assertions in this case.  (*See, e.g.,* Dkt. 14 at 14 ("Here in this case the lower court threatened to utilize its discretion on behalf of the prosecution to issue a life sentence if Petitioner did not plead guilty.")).  However, a review of the plea transcript makes clear that Judge Murphy did not threaten Petitioner.  Instead, Petitioner and Judge Murphy had the following exchange:

> THE COURT: Has anyone made any threats or promises to you to get you to enter this plea against your will?
> [PETITIONER]: I mean I wouldn't say anyone made any threats or any promises beyond the promises that was made by the prosecutor and I deal [sic] with the concept of facing a life sentence; that's it.
> THE COURT: Well, do you understand that legally you could have been facing a life sentence?
> [PETITIONER]: See that's what I—I didn't know.
> THE COURT: So it weighed on your mind, correct?
> [PETITIONER]: Yes, yes.
> THE COURT: All right.  I don't think that's the type of threats that the higher courts are referring to.  Anyone made any improper threats to you?
> [PETITIONER]: Oh not—no, sir. No, sir.

of 2020, Petitioner confirmed that he accepted the plea agreement because he was "[i]n fear of the Court utilizing its discretion . . . to sentence defendant to life." (Dkt. 27-1 at 418). On this record, Petitioner cannot demonstrate that he would have chosen not to plead guilty had he been correctly informed that conditional pleas are generally not accepted in New York.

Any error was also harmless because the outcome of the proceeding would have been no different had the Appellate Division considered Petitioner's arguments on the merits on direct appeal. As an initial matter, the Court notes that the Appellate Division did not find Petitioner's judicial bias argument forfeited by his guilty plea, but instead concluded on the merits that it did "not require reversal or modification of the judgment." *Hill*, 188 A.D.3d at 1757. Accordingly, Petitioner received the full benefit of the conditional plea with respect to this argument.

As to Petitioner's *Brady* argument, he argued on direct appeal that the County Court erred in not requiring the prosecution to turn over police body camera footage. (Dkt. 27-1 at 51-52). The County Court had reviewed the body camera videos and determined that

---

THE COURT: Other than the fact that you could have been treated as a persistent felony offender if you did—if you were convicted of this crime, were there any threats?
[PETITIONER]: No sir.

(Dkt. 27-6 at 12-3). In other words, it was Petitioner who raised the possibility that he could be facing a potential life sentence if convicted, not Judge Murphy. Judge Murphy then confirmed that Petitioner understood that a life sentence could be a legal possibility if Petitioner was convicted of the crimes in the indictment; he did not at any point threaten to give Petitioner a life sentence if Petitioner did not agree to plead guilty.

"they were all relatively brief and nothing in any of the videos can be construed as Brady material." (*Id.* at 292).  The body camera footage was ordered to be turned over to Petitioner, but not as early as Petitioner had asked for.  (*See id.* at 293 (ordering that body camera videos be turned over to Petitioner by no later than April 10, 2018, at 10:00 a.m.)).

"To establish a *Brady* violation, '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *United States v. Gil*, 297 F.3d 93, 101 (2d Cir. 2002) (alteration in original and quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).  Petitioner did not come even close to satisfying this standard in making his *Brady* argument on direct appeal.  There is no evidence in the record to support the conclusion that the body camera footage was exculpatory.  The only argument Petitioner made in this regard on direct appeal was that "[i]n diligent hands, almost anything can be Brady[.]"  (Dkt. 27-1 at 51).  This conclusory assertion is plainly insufficient to demonstrate any *Brady* error by the County Court.  As such, there is no reasonable possibility that the Appellate Division's failure to review this argument on the merits had any impact on the outcome of Petitioner's appeal.

As to Petitioner's arguments about the grand jury proceedings, he contended on direct appeal that "gross inconsistencies" in the victim Elton Carr's testimony, the failure to call certain witnesses, the prosecutor's interruption of a grand juror's questioning of Petitioner, and the prosecutor's "alleging that Elton had filed a criminal complaint against [Petitioner] in recent days" combined to render the indictment defective.  (Dkt. 27-1 at 53-54).  However, under New York law, "[d]ismissal of an indictment is an extreme remedy that is limited to

those instances where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the grand jury." *People v. Boddie*, 126 A.D.3d 1129, 1130 (3d Dep't 2015) (quotation and alterations omitted). "In general, this demanding test is met only where the prosecutor engages in an over-all pattern of bias and misconduct that is pervasive and typically willful, whereas isolated instances of misconduct, including the erroneous handling of evidentiary matters, do not merit invalidation of the indictment." *People v. Thompson*, 22 N.Y.3d 687, 699 (2014) (quotations omitted). The arguments advanced by Petitioner on direct appeal did not come close to meeting this exacting standard, and there is accordingly again no reasonable possibility that the Appellate Division's failure to consider them on the merits had a substantial and injurious effect or influence on the outcome of Petitioner's state criminal proceeding.

For all these reasons, the Court finds that Petitioner is not entitled to federal habeas relief on his claim that his guilty plea was not entered into in a knowing, voluntary, and intelligent manner.

**III.**   **Challenges to Grand Jury Proceedings**

The Court turns next to Petitioner's claims that the indictment was defective because it was obtained by false and perjured statements (Dkt. 14 at 6) and because the prosecutor intimidated and withheld evidence and information from the grand jurors (*id*. at 8). "There is no federal constitutional right to indictment by a grand jury in a state criminal prosecution." *Dudley v. LaClair*, No. 2:19-CV-07270, 2023 WL 8934913, at *7 (E.D.N.Y. Dec. 27, 2023); *see Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir. 1990) ("The Fifth Amendment right to indictment by a grand jury was not incorporated by the Due Process

Clause of the Fourteenth Amendment, and, accordingly, does not pertain to the states.").

Accordingly, "[c]laims of deficiencies in state grand jury proceedings are not cognizable in

a habeas corpus proceeding in federal court." *Davis v. Mantello*, 42 F. App'x 488, 490-91

(2d Cir. 2002); *see also Navarro v. McCarthy*, No. 6:20-CV-06094 EAW, 2023 WL

8375858, at *16 (W.D.N.Y. Dec. 4, 2023) ("Petitioner's claim concerning the prosecutor's

manner of presenting his case to the grand jury is not cognizable and cannot provide a basis

for habeas relief."); *May v. Warden*, No. 07 CIV. 2176(BSJGWG), 2010 WL 1904327, at

*3 (S.D.N.Y. May 10, 2010) ("There is no federal constitutional right to a grand jury in a

state criminal prosecution and thus a claim of deficiency in the proceeding is not cognizable

in a habeas corpus proceeding. This rule applies to claims of perjury." (quotation and

citations omitted)).  Petitioner cannot obtain federal habeas relief on either of these bases.

## IV.   *Brady* **Claim**

The Court next considers Petitioner's claim that the prosecution improperly withheld

*Brady* material, thereby preventing him from preparing defenses.  (Dkt. 14 at 29).  As an

initial matter, Respondent argues that this claim is unexhausted[5] because Petitioner failed to

properly seek leave to appeal the County Court's denial of the CPL § 440.10 motion in which

he raised this issue.  (*See* Dkt. 26 at 15).  Respondent acknowledges that Petitioner raised a

---

[5]      Generally, "[a] federal court may not consider a petition for habeas corpus unless the
petitioner has exhausted all state judicial remedies." *Young v. Conway*, 761 F. Supp. 2d 59,
72 (W.D.N.Y. 2011), *aff'd*, 698 F.3d 69 (2d Cir. 2012); *see* 28 U.S.C. § 2254(b)(1)(A).

*Brady* claim on direct appeal, but notes that this *Brady* claim was different from the *Brady* claim presented in this habeas action.  (*Id.* at 15 n.5).

Respondent further argues that Petitioner's *Brady* claim should be deemed procedurally defaulted, but acknowledges that in *Pesina v. Johnson*, 913 F.2d 53 (2d Cir. 1990), "the Second Circuit found that the above circumstances did not amount to a default in state court."  (Dkt. 26 at 16).  Respondent nevertheless urges the Court to adopt the reasoning of several other district courts in this Circuit, which have concluded that *Pesina* was "undermined by later Supreme Court authority[.]"  (*Id.*); *see, e.g., Shields v. Stallone,* No. 14-CV-7596PKCDF, 2016 WL 5930262, at *4 n.2 (S.D.N.Y. Oct. 12, 2016); *but see Shomo v. Maher*, No. 04-CV-4149KMK, 2005 WL 743156, at *7 (S.D.N.Y. Mar. 31, 2005) ("While there is much to be said for those courts that have recognized the wavering viability of *Pesina*, its demise cannot be declared by this Court.").

Ultimately, this Court need not decide whether *Pesina* remains good law, because Petitioner's *Brady* claim fails in either event.  If, as Respondent urges, Petitioner defaulted on his *Brady* claim in state court, it is now procedurally barred from federal habeas review, and this Court can grant him relief only if it finds "cause for the default plus prejudice, or a showing of actual innocence."  *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001).  This standard cannot be satisfied here.  First, the Court does not find that Petitioner has demonstrated actual innocence.  To the contrary, at his plea hearing, he gave sworn testimony that he committed the crime of which he was convicted.

Second, Petitioner cannot demonstrate cause or prejudice.  As to cause, Petitioner has identified no reason why he did not seek leave to appeal the denial of his New York Criminal

Procedure Law § 440.10 motion.  As to prejudice, his *Brady* claims are without merit. Petitioner's primary current *Brady* claim is that "the alleged victim in this case made several false allegations against Petitioner" because he was "high out of his mind," but the prosecution refused to turn over toxicology reports.  (Dkt. 14 at 30-31).  Petitioner also asserts that the prosecution suppressed the arrest warrant, the victim's parole records, and "the deals made to [eliminate] [the victim's] parole violations."  (*Id*. at 37-38).

Petitioner cannot satisfy the *Brady* standard as to these claims.  The record indicates that the prosecution turned over the victim's medical records and criminal record to Petitioner.  (Dkt. 27-1 at 190, 199-200, 295).  As to the arrest warrant for Petitioner, Petitioner has not demonstrated that it was in any way exculpatory.  There is further no evidence before the Court that the toxicology reports Petitioner claims were suppressed actually exist or were in the prosecution's possession, or that they were exculpatory. Petitioner cannot obtain habeas relief under these circumstances.  *See, e.g., Franza v. Stinson*, 58 F. Supp. 2d 124, 154 (S.D.N.Y. 1999) ("[The petitioner's] claim of withheld *Brady* material is speculative, conclusory and unsupported, and thus must be rejected.").

Assuming that Petitioner has not defaulted*,* the Court nevertheless has the discretion to dismiss a meritless habeas claim "regardless of whether the applicant exhausted his state court remedies." *Abuzaid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013) (citing 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")).  Here, because Petitioner's *Brady* claim clearly fails on the merits for the

reasons discussed above, the Court finds that Petitioner is not entitled to federal habeas relief on this basis regardless of exhaustion status.

## V.   Judicial Bias Claim

The Court turns finally to Petitioner's claim of judicial bias.  Respondent again argues that this claim is unexhausted but should be deemed exhausted and procedurally barred, notwithstanding *Pesina*.  (Dkt. 26 at 15-17).  The Court again need not resolve this procedural issue, because Petitioner's judicial bias claim is plainly meritless and thus cannot warrant federal habeas relief under any circumstances.

Due process requires "'a fair trial in a fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). "Mere allegations of judicial bias or prejudice do not state a due process violation." *Brown v. Doe*, 2 F.3d 1236, 1248 (2d Cir. 1993).  Petitioner alleges that Judge Murphy was biased against him because: (1) Judge Murphy had "a prior legal association with the prosecutor presenting the case to him"; (2) Judge Murphy ruled against him on a variety of legal issues; and (3) Judge Murphy threatened him with a life sentence.  (Dkt. 14 at 18-27).  Petitioner also seems to argue that Judge Sheldon (the sentencing judge) was biased because she would not allow him to withdraw his guilty plea due to her "prior legal association with [the] district attorney."  (*Id*. at 32-33).  These arguments lack merit.

First, the existence of a prior professional relationship between a judge and the prosecutor is insufficient to establish bias.  *See, e.g., Barbur v. Superintendent of Wende Corr. Facility*, No. 05-CV-709(SR), 2010 WL 1816696, at *5 (W.D.N.Y. May 5, 2010)

("Judge Noonan's prior history as District Attorney and previous professional relationship with the current District Attorney is insufficient to raise even a colorable claim of bias.").

Second, Judge Murphy's legal rulings—despite Petitioner's vehement disagreement therewith—do not demonstrate bias. *See, e.g., Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009) ("Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality."); *Lane v. Graham*, No. 9:14-CV-01261-JKS, 2016 WL 154111, at \*13 (N.D.N.Y. Jan. 12, 2016) ("[T]he Supreme Court has explained that adverse judicial rulings, standing alone, are not probative of judicial bias. [The petitioner's] claims that the trial judge was biased as evidenced by his adverse rulings thus fails to set forth a violation of the due process clause." (citation omitted)).[6]

Third, and as previously discussed, Judge Murphy did not threaten Petitioner with a life sentence. At the plea hearing, Petitioner raised the possibility that he could be facing a potential life sentence if convicted, not Judge Murphy. (*See* Dkt. 27-6 at 12-13). Judge Murphy confirmed that a life sentence could be a legal possibility if Petitioner was convicted of the crimes in the indictment but did not at any point threaten to impose such a sentence.

---

[6]     Petitioner also suggests that Judge Murphy deliberately misled him about the enforceability of his conditional plea out of bias. (*See* Dkt. 14 at 21-22). As discussed above, the record in no way supports the conclusion that Judge Murphy acted deliberately to mislead or trick Petitioner. To the contrary, he engaged in an extended discussion to make sure it was clear to a reviewing court the precise scope of the conditional plea. A judge's commission of a legal error is not proof of bias.

In sum, Petitioner's claim is based on nothing more than "[m]ere allegations of judicial bias or prejudice," which "do not state a due process claim." *Brown*, 2 F.3d at 1248. He is not entitled to federal habeas corpus relief on this basis.

## VI.    Motion to File Documents Electronically and to Require Submission of Supplemental Records

Petitioner has filed a motion asking the Court to allow him to submit documents electronically.   (Dkt. 49).   In light of the Court's denial and dismissal of the amended petition, this request is denied as moot.

Petitioner also asserts that Respondent has not complied with a court order directing him to "produce the records regarding Petitioner's supplemental appeals." (*Id*. at 1).   This is incorrect.   The Court did not enter any such order.   The Court ordered that the additional documents submitted by Petitioner be included in the record.   (Dkt. 41 at 4).   The Court then instructed Respondent to file a supplemental memorandum of law (*id*.), which Respondent did (Dkt. 47).   No further submissions by Respondent are necessary and Petitioner's request for the same is denied.

## CONCLUSION

For the reasons discussed above, the request for a writ of habeas corpus is denied, and the amended petition (Dkt. 14) is dismissed.   Petitioner's motion for permission to file documents electronically and to require Respondent to submit supplemental records (Dkt. 49) is denied.   The Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C.

§ 2253(c)(1), (2).  The Clerk of Court is direct to enter judgment in Respondent's favor and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  June 4, 2024
        Rochester, New York